UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PATRICIA S. HAGER,

        Plaintiff,

    v.                                23-CV-560-LJV
                                      DECISION & ORDER
PEOPLE INC. et al.,

        Defendants.
_____

On June 19, 2023, the plaintiff, Patricia S. Hager, commenced this action under 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 ("Title VII"), and the New York State Human Rights Law ("NYSHRL").  Docket Item 1.  Hager alleged that she worked for defendant People Inc.[1] ("People") from January 2017 until November 2021, when she was fired for refusing to get the COVID-19 vaccine or submit to weekly testing based on a New York State vaccination mandate, 10 N.Y.C.C.R. § 2.61.  *See id.* at ¶¶ 4, 23.  She sued People; its "affiliate corporation," People Home Health Care Services – Certified, Inc. ("CHHA");[2] and six People's employees—Rhonda Frederick, Cheryl Stiller, Britta Kelley, Jeffrey Metz, Bonnie Sloma, and Jacob Wilkins (collectively, "the non-state defendants").  *Id.* at ¶¶ 10-18.  She also sued New York State Governor Kathy Hochul and then Acting Commissioner of the New York State Department of

---

[1] The complaint refers to defendant People sometimes as "People, Inc." and sometimes as "People Inc." When using the entity's complete name, the Court has opted not to include the comma.

[2] The Court follows Hager in abbreviating CHHA's name this way.  *See* Docket Item 1.

Health James V. McDonald in both their individual and official capacities ("the state defendants").[3]  *Id.* at ¶¶ 19-20.

The complaint asserted eight causes of action.  Docket Item 1.  The first five of those were brought under Title VII and the NYSHRL and were asserted against only the non-state defendants.  *See* Docket Item 1 at 24-28.[4]  The sixth through eighth claims, in contrast, were brought under section 1983 and the Declaratory Judgment Act based on the state defendants' vaccine requirements; those claims focused on the actions of the New York State government (and Hochul specifically) but were asserted against all defendants based on their complicity with that regulatory scheme.  *See id.* at 28-40.  More specifically, Hager asserted claims (1) under 42 U.S.C. § 1983 for the violation of her First Amendment right prohibiting the establishment of religion; (2) under 42 U.S.C. § 1983 for the violation of her First Amendment right to the free exercise of religion; and (3) under 28 U.S.C. § 2201 seeking a declaratory judgment that section 2.61 violated federal law.  *See id.*

After the state defendants moved to dismiss the claims against them, Docket Item 15, Hager responded, Docket Item 24, and the state defendants replied, Docket Item 26.  In the meantime, the non-state defendants answered the complaint, Docket Item 10, and they later moved for judgment on the pleadings on Hager's sixth through

---

[3] Hager also sued "John Does 1-20," whom she describes as the "individuals and / or other legal entities the name and domiciliary of whom are currently unknown, including but not limited to those individuals who acting alone or in concert with others formulated, directed, controlled, had the authority to control, or participated in or otherwise caused the acts and practices as set forth in this [c]omplaint."  Docket Item 1 at ¶ 21.

[4] Page numbers in docket citations refer to ECF pagination.

2

eighth causes of actions for the same reasons in the state defendants' motion to dismiss, see Docket Item 25.  Hager did not respond to the motion for judgment on the pleadings, effectively conceding that her section 1983 and Declaratory Judgment Act claims against the non-state defendants stood and fell with her claims against the state defendants.

On August 22, 2024, Hager filed a letter asking the Court to rule on the pending motions so that her case could proceed to discovery.  Docket Item 28.  About a month later, the Court heard oral argument on the pending motions.  See Docket Item 31.  At the close of that argument, it granted both motions for the reasons stated on the record, see Docket Items 31 and 32, and later that day, it referred the case to United States Magistrate Judge Jeremiah J. McCarthy for discovery on Hager's remaining claims against the non-state defendants, Docket Item 33.

Although the parties have since advised the Court that they have "reached a settlement in princip[le]," Docket Item 44, the Court nevertheless issues this decision to more fully explain its reasoning.

## **BACKGROUND**[5]

Hager is a "devout and practicing Roman Catholic."  Docket Item 1 at ¶ 22.  She "was employed full-time as a [p]roject [m]anager by People Inc. within its Administration Department for nearly five years, from January 9, 2017, to November 15, 2021."  Id. at

---

[5] The following facts are taken from the complaint, Docket Item 1.  On a motion to dismiss, courts "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff."  Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt., 843 F.3d 561, 566 (2d Cir. 2016).

¶ 23. Hager maintains that she "was not and never was an employee" of People's "affiliate corporation," CHHA, which "assign[s] personnel who perform at-home, medically prescribed support services for people of all ages in need of acute medical care or assistance with daily living." *Id.* at ¶¶ 10, 12, 24-25.

On August 16, 2021, then New York State Governor Andrew Cuomo, through the New York State Department of Health ("DOH"), implemented a regulation that "required all hospital healthcare workers to be fully vaccinated against COVID-19 by September 27, 2021." *Id.* at ¶¶ 40-41. That regulation provided for a medical or religious exemption: As relevant here, it did not require individuals with "sincerely held religious" objections to the COVID-19 vaccines to be vaccinated. *Id.* at ¶ 44. But eight days later, "immediately upon [Governor Cuomo's] resignation," the New York State Public Health & Health Planning Council ("PHHPC") "published a new proposed regulation," 10 N.Y.C.C.R. § 2.61, "that expanded the vaccination requirement and eliminated the religious exemption." *Id.* at ¶ 45. DOH "offered no explanation for vacating the religious exemption or why a reasonable accommodation provided to medically exempt health[]care workers was not similarly . . . extended to healthcare workers or administrative support workers who do not perform healthcare services."[6] *Id.* at ¶ 47.

---

[6] The state defendants say that Hager's account of the regulatory history is incorrect. More specifically, they say, section 2.61 was not a new version of Governor Cuomo's order because the two regulations were enacted "through different processes." Docket Item 15-1 at 19 n.11. And they say that "[e]ven on a motion to dismiss, the Court may take judicial notice of filings in the [s]tate [r]egister and other matters of public record that are not subject to reasonable dispute, such as administrative rulemakings." *Id.* at 6 n.4 But this Court did not need to resolve this dispute to rule on the motions. *See infra.*

Hager says that in implementing section 2.61, Cuomo's replacement, Governor Hochul, "effectively targeted sincere and devout Roman Catholics and Christians, including . . . Hager, and any other persons who opposed mandatory COVID-19 vaccines on the basis of sincerely held religious beliefs." *Id.* at ¶ 48.  And she says that several of Hochul's "[p]ublic statements . . . bear witness to [Hochul's] intent and animus targeting faithful religious opposition to the COVID-19 vaccines." *Id.*; *see also id.* at ¶¶ 49-53 (providing examples).  More specifically, Hager says that "Governor Hochul admitted that the religious exemption was intentionally 'left off' the []DOH's new regulation," stating that there was "no 'sanctioned religious exemption from any organized religion' and that organized religions are 'encouraging the opposite.'" *Id.* at ¶ 49.

According to Hager, Hochul even said that "everybody from the Pope on down is encouraging people to get vaccinated." *Id.* at ¶ 50.  On another occasion, Hager says, the governor opined, "How can [anyone] believe that God would give a vaccine that would cause [them] harm?  That is not truth.  Those are just lies out there on social media." *Id.* at ¶ 51.  Hager says that Hochul referred to those who were vaccinated as "the smart ones" and said that there were "people out there who aren't listening to God and what God wants," implicitly referring to those who were unvaccinated.  *See id.* at ¶ 52.  Finally, Hager says,

> Governor Hochul went so far in her public remarks as to encourage people to eventually serve as her apostles to persuade others to get vaccinated as if on a religious crusade at her behest.  She characterized vaccine-hesitant New Yorkers essentially as heretics who were "not listening to what God wants," and said, "I need you to be my apostles.  I need you to go out and talk about it and say, we owe this to each other.  We love each other."

*Id.* at ¶ 53.

Following the adoption of section 2.61, "Hager received a letter via regular mail signed by [defendant] Stiller on behalf of People Inc. stating that CHHA employees must be vaccinated by October 7, 2021[ and] attach[ing] a copy of [section 2.61]." *See id.* at ¶ 69 (bolding omitted). Defendant Wilkins then followed up to see whether Hager had received the letter and the two "discussed . . . Hager's sincerely held religious beliefs as a Roman Catholic against taking the [COVID-19] vaccines."[7] *Id.* at ¶¶ 71-72.

On October 21, 2021, defendant "Kelley called . . . Hager . . . and informed her that People Inc. would accommodate her [with respect to] the vaccine but that her accommodation was that [she] had to submit to weekly COVID-19 testing and submit the findings to People Inc. promptly each week, and that . . . Hager would have to find a testing site and pay for the testing as well." *Id.* at ¶ 100. Hager "explained that she had submitted an exemption for both the vaccine and the testing because *both* violated her religious beliefs." *Id.* at ¶ 102 (emphasis added). "Kelley informed . . . Hager that this accommodation was the[] final offer and that [she] had until the next day to tell Kelley what her decision was." *Id.*

The next day, Hager called Kelley and informed her that "COVID-19 testing [went] against her sincerely held religious beliefs." *Id.* at ¶ 104. Hager was told that she would be given "two weeks" to apply for another position at People that was not subject to section 2.61's vaccine requirement. *Id.* at ¶ 105. But "it was evident that . . . Hager either did not qualify for the openings listed or that it would be a drastic pay reduction

---

[7] Hager's opposition to the COVID-19 vaccines is rooted in her religious opposition to abortion: "The available COVID-19 vaccines all employed human fetal cell lines derived from procured abortion in [their] testing, development[,] or production," she says. Docket Item 1 at ¶ 43; *see also id.* at ¶ 87.

from her current salary." *Id.* at ¶ 106.  In fact, "the instruction to seek other positions with People Inc. was merely perfunctory and illusory because there were no positions commensurate with . . . Hager's experience and skills."  *Id.*  Hager was fired from People on November 15, 2021.  *Id.* at ¶¶ 110, 112.  About a year and a half later, she filed this suit.  *See* Docket Item 1.

## LEGAL PRINCIPLES

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

The standard for deciding a Rule 12(c) motion is "the same . . . standard [that is] applicable to dismissals pursuant to [Rule] 12(b)(6).  Thus, [courts] will accept all factual allegations in the [c]omplaint as true and draw all reasonable inferences in [the plaintiff's] favor."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011).

## DISCUSSION

In her sixth through eighth claims, Hager sought an injunction preventing the defendants from enforcing section 2.61 "or any future [e]xecutive [o]rder which

establishes Governor Hochul's personal religious views," a declaration that section 2.61 is unlawful, and damages.[8]  *See* Docket Item 1 at 29-30, 38.  But the Court determined that none of those claims could proceed because (1) her claims for injunctive and declaratory relief were moot and (2) she had failed to state a claim for damages under section 1983.

## I.     REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF

Hager asked this Court to enjoin the state defendants from enforcing section 2.61 or any future order that, like section 2.61, "establishes Governor Hochul's personal religious views"; she also asked the Court to declare that section 2.61 violates both 21 U.S.C. § 300bb and the Food and Drug Administration's informed consent regulation, 45 C.F.R. 45.116(b)(8).  Docket Item 1 at 31-38.  The state defendants argued that those claims were moot because section 2.61 had been repealed as of October 4, 2023.  *See* Docket item 15-1 at 9-10.

This Court agreed with the state defendants.  Hager did not contest the fact that section 2.61 had been repealed.  *See* Docket Item 24 at 21.  And in *Haczynska v. Mount Sinai Health Sys., Inc.*, 738 F. Supp. 3d 300, 314-15 (E.D.N.Y. 2024), the court found that the claims for injunctive relief based on section 2.61—and brought by plaintiffs who, like Hager, were fired for not getting the vaccine—were "moot" in light of the regulation's repeal.  *Id.*  As that court explained, because section 2.61 is no longer

---

[8] Hager also asked this Court to "[d]eclar[e] that the so-called COVID-19 vaccines are not safe or effective."  Docket Item 1 at 38.  It was entirely unclear to the Court on what basis it could or would make such a determination.  In any event, for the reasons discussed below, Hager's claims for injunctive and declaratory relief as to her sixth, seventh, and eighth claims, and therefore her request for a declaration about the safety or effectiveness of the "so-called COVID-19 vaccines," are moot.

8

in effect, "the [c]ourt c[ould] no longer fashion any form of meaningful injunctive relief." *Id.*; *see Lewis v. Cuomo*, 575 F. Supp. 3d 386, 396 (W.D.N.Y. 2021) (explaining that "an action seeking declaratory and[] injunctive relief against an allegedly unconstitutional statute becomes moot if the statute is repealed").

Hager argued that her claims nevertheless survived because she had been fired as a result of section 2.61 and because either the "voluntary cessation" or "capable or repetition yet evading review" exception to mootness applied. Docket Item 24 at 21-25. But in *Haczynska*, the court rejected the very argument that Hager made here—that the fact that she had been fired under the regulation and never reinstated kept her claims live—and this Court agreed with that decision. *See id.* at 315 n.9. (stating that "[p]laintiffs offer no support for their contention that the Court could order [the s]tate [d]efendants to reinstate [the p]laintiffs to their former positions at [non-state] employer"). And it held that the "voluntary cessation" exception did not apply because, in light of the state's unequivocal repeal of the regulation, "reoccurrence of a similar mandate is only theoretically possible." *See id.* at 315-16 (citation and internal quotation marks omitted). Again, this Court agreed.

Hager provided no facts suggesting that re-enactment of section 2.61 is anything more than "speculative." *See id.*; *see generally* Docket Items 1 and 24. And for that reason, the voluntary cessation exception does not apply. *See Haczynska*, 738 F. Supp. 3d at 314-15; *see also Tandian v. State Univ. of New York*, 698 F. Supp. 3d 425, 434 (N.D.N.Y. 2023) ("To the extent that [the p]laintiff maintains that the voluntary cessation doctrine precludes the Court from dismissing her claims as moot following [s]ection 2.61's repeal, the Court rejects [that] argument." (internal citation omitted)); *cf.*

9

*Marciano v. Adams*, 2023 WL 3477119, at *1 (2d Cir. May 16, 2023) (summary order) (in case involving different Covid-19 vaccine mandate, holding plaintiff's claims for declaratory and injunctive relief moot because "[d]efendants have repealed that mandate, and [courts] cannot enjoin what no longer exists . . . [nor] can [they] award declaratory relief, which requires an ongoing, real and substantial underlying dispute to confer subject matter jurisdiction" (internal citations and internal quotation marks omitted)), *cert. denied*, 144 S. Ct. 286 (2023).

Similarly, because Hager "offer[ed] no basis for the Court to conclude that [she] would be subject to another similar mandate," the "capable of repetition yet evading review exception" also did not apply. *See Haczynska*, 738 F. Supp. 3d at 316 n.10; *see also Resurrection Sch. v. Hertel*, 35 F.4th 524, 530 (6th Cir. 2022) ("T[he capable of repetition yet evading review] exception is inapposite for largely the same reasons the [voluntary cessation] exception is. Here, the challenged mandate was a product of the pandemic's early stages, and the plaintiffs' objections to it are grounded in the mandate's particulars. We are unlikely to see this mandate in a similar form again.").

In sum, because any opinion that this Court might have offered about the constitutionality and lawfulness of section 2.61 would have been merely advisory, Hager's claims for injunctive and declaratory relief were dismissed as moot.[9]

---

[9] The state defendants alternatively argued that Hager's declaratory judgement claim must be dismissed because section 2.61 simply did not violate either 21 U.S.C. § 300bb or 45 C.F.R. 45.116(b)(8). Docket Item 15-1 at 10-12. Hager did not respond to that argument. *See* Docket Item 24. A plaintiff's "failure to oppose [the d]efendants'] specific argument in a motion to dismiss is deemed waiver of that issue." *BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 819 (S.D.N.Y. 2021), *aff'd*, 2022 WL 598973 (2d Cir. Mar. 1, 2022); *see also* Docket Item 26 at 3 (noting Hager's failure to oppose its argument on that point). So even if Hager's declaratory judgment claim were not moot, this Court would have dismissed it.

## II. SECTION 1983 CLAIMS

Hager asserts claims under section 1983 against the state defendants—Governor Hochul and Commissioner McDonald—in their individual and official capacities. The Court examines each set of claims in turn.

### A. Official Capacity Claims

Because this Court dismissed Hager's claims against Hochul and McDonald for declaratory relief, her only remaining claim against those defendants was one for damages. But it is well established that "sovereign immunity . . . bar[s] claims for monetary damages brought against state officers sued under section 1983 in their official capacities." *See Goonewardena v. New York*, 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007).

Hager did not contest that more than a century of caselaw bars her claim. Instead, she argued that the Supreme Court's 1890 decision in *Hans v. Louisiana*, 134 U.S. 1, 17 (1890), should be overturned. Docket Item 24 at 7. But as Hager herself admitted, this Court has no power to overturn a Supreme Court decision. *Id.* at 33.

Hager's official capacity claims against the state defendants therefore were dismissed.

### B. Individual Capacity Claims

Hager's complaint asserted claims for damages against both Hochul and McDonald in their individual capacities as well. But the complaint did not identify any specific actions taken by McDonald. *See* Docket Item 1. And as the state defendants argued, *see* Docket Item 15-1 at 8, that doomed Hager's damage claim against him. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (to establish liability

11

against a government official under section 1983, "a plaintiff must plead and prove 'that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution'" (quoting *Iqbal*, 556 U.S. at 676)).  In fact, Hager did not oppose the state defendants' argument that her individual capacity claims against McDonald should be dismissed for failure to allege personal involvement.  *See* Docket Item 24; Docket Item 26 at 3.

The Court therefore dismissed the claims against McDonald and turned to Hager's claims that Hochul violated her right to the free exercise of religion and against the establishment of religion.

### 1. Free Exercise

The Free Exercise Clause protects "the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through the performance of (or abstention from) physical acts."  *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 109 (2d Cir. 2024) (some internal quotation marks omitted) (quoting *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524 (2022)).  But that clause "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability."  *Id.* (quoting *Kane v. De Blasio*, 19 F.4th 152, 164 (2d Cir. 2021)).  "A law that is both neutral and generally applicable is subject to rational basis review."  *Id.*  "By contrast, if a law is 'not neutral or not generally applicable, it is subject to strict scrutiny, and the burden shifts to the government to establish that the law is narrowly tailored to advance a compelling government interest.'"  *Id.* (quoting *We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 144 (2d Cir. 2023)).

12

Under Supreme Court and Second Circuit precedent, a government "fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 284 (2d Cir. 2021) (per curiam) (quoting *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021)), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021). And "a law [or regulation] may not be 'generally applicable' . . . for either of two reasons: first, 'if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions'; or, second, 'if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way.'" *We the Patriots*, 17 F.4th at 284 (quoting *Fulton*, 593 U.S. at 533-34).

In 2021, the Second Circuit considered a motion for a preliminary injunction of the state's enforcement of the same regulation that Hager challenges here: section 2.61. *See We The Patriots*, 17 F.4th at 281.[10] In determining the plaintiffs' likelihood of succeeding on the merits, the court found that the plaintiffs had not met their burden of showing that the regulation was not neutral or generally applicable. *See id.* Indeed, it determined that the regulation was "facially neutral because it [did] not single out employees who decline vaccination on religious grounds" but "applie[d] to all 'personnel,' as carefully defined in the [regulation], aside from those who qualify for the narrowly framed medical exception." *Id.*

---

[10] The Second Circuit's clarification addressed only its Title VII analysis and did not address or clarify the constitutional analysis included in its first opinion. *See We the Patriots USA, Inc. v. Hochul*, 17 F.4th 368, 368-71 (2d Cir. 2021).

13

Moreover, the Second Circuit rejected—at least at the preliminary injunction stage—the very arguments that Hager made here: namely, that section 2.61 is not neutral because it does not include a religious exemption, as did an earlier state regulation, or because of comments about section 2.61 made by Hochul.[11]  *Id.* at 281-285.

Other district courts have found that section 2.61 is both neutral and generally applicable, survives rational basis review, and therefore does not violate the Free Exercise Clause.  See *Conde v. Mid Hudson Reg'l Hosp. Med. Ctr.*, 2024 WL 168282, at \*3-5 (S.D.N.Y. Jan. 12, 2024) (Briccetti, J.) (granting defendants' motion to dismiss plaintiff's free exercise claim because "[s]ection 2.61 is a neutral law of general applicability, and it easily satisfies rational-basis review"); *Does 1-2 v. Hochul*, 632 F. Supp. 3d 120, 134-43 (E.D.N.Y. 2022) (Donnelly, J.) (same); *Algarin v. NYC Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 518 (S.D.N.Y. 2023) (Rochon, J.) (same), *aff'd sub nom. Algarin v. New York City Health & Hosps. Corp.*, 2024 WL 1107481 (2d Cir. Mar. 14, 2024); see also *Conde*, 2024 WL 168282, at \*4 ("It is now well[ ]settled in this [c]ircuit that Section 2.61 is both neutral and generally applicable.").

This Court saw no reason to break from those clear, persuasive, and well-reasoned precedents.  Indeed, at oral argument, Hager's counsel conceded that the

---

[11] Hager did not dispute that *We the Patriots* was at odds with her claims here. Instead, she argued that that decision "should be vacated and should be considered to be non-precedential since the Second Circuit was considering an illegal [regulation]," noting that a New York State Supreme Court later found that section 2.61 was "beyond the scope of executive powers."  Docket Item 24 at 26-27.  And Hager also argued that the Second Circuit erred in relying on *Jacobson v. Massachusetts*, 197 U.S. 11, 25 (1905). *Id.* at 27.  But this Court is as powerless to vacate Second Circuit decisions as it is to overturn Supreme Court precedent.

weight of authority was against Hager. The Court therefore dismissed Hager's section 1983 claim insofar as it was based on a violation of her right to the free exercise of religion.

### B. Establishment of Religion

Finally, the Court also dismissed Hager's section 1983 claim based on the state defendants' alleged violation of the Establishment Clause.

"The First Amendment provides, in part, that 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.'" *Trump v. Hawaii*, 585 U.S. 667, 699 (2018) (quoting U.S. Const. amend. I). The Supreme Court has stated that "[t]he clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Id.* (quoting *Larson v. Valente*, 456 U.S. 228, 244 (1982)). And more recently, the Court "has instructed that the Establishment Clause must be interpreted by "reference to historical practices and understandings." *Kennedy*, 597 U.S. at 535.

Hager argued that section 2.61 violates the Establishment Clause because it was "designed to target religious practices which d[id] not concur with those of the top [s]tate official," Hochul. Docket Item 24 at 29. But the reasoning of *We the Patriots* is at odds with Hager's argument. Of course, the plaintiffs there did not assert an Establishment Clause claim against the vaccine mandate, so the Second Circuit had no occasion to address it. Nonetheless, the Second Circuit rejected the plaintiffs' argument that section 2.61 was anything other than facially neutral. *See We the Patriots*, 17 F.4th at 281-84. And as already noted, it also rejected the plaintiffs' argument that Governor Hochul's comments were enough to make the regulation an attempt "on the part of the

15

State to target those with religious beliefs contrary to [Hochul's]." *See id.*; *see also Trump*, 585 U.S. at 702, 704-710 (holding that presidential proclamation did not violate the Establishment Clause where it was "facially neutral toward religion" notwithstanding comments by now President, then candidate Trump about Muslims). So there was simply no basis to find that section 2.61 established any kind of religious preference whatsoever.

Further, historical practice favors the defendants here: As the Southern District of New York noted in a case involving a challenge to a different vaccine mandate, "there is a long history of vaccination requirements in this country and in this [c]ircuit." *Kane v. de Blasio*, 623 F. Supp. 3d 339, 359 (S.D.N.Y. 2022) (granting motion to dismiss Establishment Clause claim). Indeed, in *Jacobson v. Massachusetts*, the Supreme Court held that state governments had the power to require smallpox vaccinations. *See* 197 U.S. 11, 38 (1905). And although the plaintiff in that case brought a due process, rather than a First Amendment, challenge to the mandate in question, *Jacobson* speaks to a broader history of vaccine requirements in this country. Allowing Hager's Establishment Clause claim to proceed here would fly in the face of that history.

The Court therefore dismissed Hager's section 1983 claim based on a violation of her right against the establishment of religion.

## CONCLUSION

For the reasons stated above and on the record in court, the state defendants' motion to dismiss was granted, and the non-state defendants' motion for judgment on the pleadings as to the sixth, seventh, and eighth causes of action also was granted.

Dated: October 16, 2025
       Buffalo, New York

                                        */s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE